IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA E. HAYNES, JR., <br>     Plaintiff, | : <br> : <br> : |
| v. | :    CIVIL ACTION NO. 22-CV-1954 |
| | : |
| RICHARD LEACH, *et al.*, <br>     Defendants. | : <br> : |

## MEMORANDUM

**GOLDBERG, J.**                                                                              September 28, 2022

Plaintiff Joshua E. Haynes, Sr., proceeding <u>pro se</u>, brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights based on events that occurred while he was a pretrial detainee at the George W. Hill Correctional Facility ("the Facility"). (Compl., ECF No. 2.) Haynes has also filed a Motion for Leave to Proceed <u>in Forma Pauperis</u> and an inmate account statement. (ECF Nos. 1, 3.) For the following reasons, I will (1) grant Haynes leave to proceed <u>in forma pauperis</u>; (2) dismiss with prejudice Haynes's claims based on responses to grievances; (3) dismiss without prejudice Haynes's due process claim based on placement in the Special Management Unit (SMU), Haynes's due process claim based on confiscation of his possessions, and Haynes's claims based on conditions of confinement, retaliation, failure to protect, excessive force, deliberate indifference, and violations of federal statutes. Haynes will be granted leave to file an amended complaint.

**I.**       **FACTUAL ALLEGATIONS[1]**

Haynes names the following Defendants: Chief of Security Richard Leach, Residential Coordinator Michael Moore, and Nurse Shelly. (Compl. at 2, 3.) All are alleged to be employees

---

[1] The allegations set forth in this Memorandum are taken from Haynes's Complaint (ECF No. 2). Page numbers refer to the pagination assigned by the CM/ECF docketing system.

1

of the Facility. (Id.) Haynes alleges that the events giving rise to his claims occurred between April 20, 2020 and February 20, 2022, while he was a pretrial detainee at the Facility. (Id. at 4.) Haynes completed the Court's form complaint for a prisoner filing a civil rights claim and attached several grievance forms. He alleges that the staff failed to respond to these grievances. (Id. at 5.) Haynes also attached additional handwritten pages to his Complaint, which provide further allegations. I interpret the entire submission to constitute the Complaint.

In a grievance form, Haynes alleges that on April 28, 2020, he refused a Covid-19 test, upon which Correctional Officer Ashley Dixon, who is not a defendant, reported to Defendant Moore that Haynes was not following orders. (Id. at 13.) Haynes alleges that as a result, Moore placed Haynes in a cell with another inmate over Haynes's request to be housed separately to avoid hurting anyone. (Id.) Haynes alleges that he was next moved to the Special Management Unit (SMU), where he was placed in a cell with a toilet that would not flush for five to six days. (Id.) He also alleges that a correctional officer on the first shift denied him showers and recreational time for two weeks. (Id.) He was provided with an acknowledgment that his grievance was received and reviewed. (Id.)

On a handwritten page, Haynes alleges that on July 20, 2020, he was placed in SMU-B-108 and, at the time of the filing of his Complaint in May 2022, was still held there "due to incompetency and negligence." (Id. at 16.) He does not allege who was responsible for his continued assignment to the SMU. He further alleges that on October 20, 2020, he filed a ten-page grievance and provided copies to four staff members, but all copies disappeared, including the copy that was among Haynes's possessions. (Id.) Haynes alleges that on December 17, 2020, he was told that his legal paperwork and property were being held for further investigation. (Id.)

In another grievance form submitted January 7, 2021, Haynes alleges that after he filed a grievance to which he claims he received no response, he was kept in the SMU, harassed, assaulted by staff (who are also alleged to have kept food away from Haynes), and had his property taken. (Id. at 12.) Haynes does not identify the staff members who engaged in the alleged conduct.

The allegations in another handwritten page appear related to the above grievance. (See id. at 15.) Haynes alleges that on December 9, 2020, he was assaulted by correctional staff. (Id.) He alleges that he was removed from his cell in the SMU and taken to speak with his Case Manager, Emily Creighton, who is not a defendant. After meeting with Creighton, Haynes alleges he was taken to the medical unit and then returned to his cell. Upon return to his cell, Haynes learned that Defendant Leach and non-defendant Lieutenant Mooney had ordered the removal of Haynes's possessions. (Id.) He further alleges that when he asked for his vegan food, it was not available. (Id.)

Haynes next alleges that he was sprayed with pepper spray by the Unit Supervisor, and that a CERT team (presumably Community Emergency Response Team) was called to extract him from his cell, strip him naked, and place him on suicide watch. He was not decontaminated before being placed on suicide watch. (Id.) Haynes alleges that several hours later, he was returned to his cell but was not provided with water and was unable to use the toilet. Additionally, he alleges that he was again maced while he was naked and not permitted to shower until December 14 (five days later). (Id.)

Another handwritten page references several time periods in 2020 and cites the Americans with Disabilities Act. (Id. at 17.) Haynes alleges that during "the first week I was on 10A" he refused to "lock in" because he had not showered in a week. (Id.) He further alleges that he was attacked by an inmate, and noted that other inmates were being assaulted and "extorted for

3

commissary." Haynes also alleges that unidentified correctional officers encouraged block workers to "gang up" on inmates who did not follow orders. (Id.) Haynes alleges that he became a block worker to receive more privileges. He also alleges that he was offered a job with pay if he agreed to engage in the assaults and extortion he had witnessed. (Id.) He claims that "[he] went home and came back," and that when he returned, he was "jumped" in his cell by a "worker" and hit with a television on the orders of an unnamed correctional officer who "was suppose[d] to be under investigation." (Id.)

A third grievance form identifies legal claims but provides no facts supporting them. (Id. at 14.) The last page of Haynes's pleading is a list of names and dates which may relate to the foregoing allegations but its meaning is unclear. (Id. at 18.)

Haynes alleges that he suffered injuries to his right pinky and his right knee and that he was not provided any medical care for these injuries. (Id. at 5.) He asserts claims for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 et seq., and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq., and state law claims for battery, false imprisonment, negligence, and medical malpractice. (Id. at 3.) He seeks an award of compensatory damages. (Id. at 10.)

## II.     STANDARD OF REVIEW

I will grant Haynes leave to proceed in forma pauperis because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Tourscher v.

McCullough, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, … contains facts sufficient to state a plausible [] claim.'" Shorter v. United States, 12 F.4th 366, 374 (3d Cir. 2021) (quoting Perez v. Fenoglio, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. Iqbal, 556 U.S. at 678. As Haynes is proceeding pro se, the Court construes his allegations liberally. Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021).

### III.  DISCUSSION

I understand Haynes to be raising claims based on his placement in the Special Management Unit (SMU) following his refusal to take a Covid-19 test, the confiscation of his property, the refusal to release him from the SMU in retaliation for his filing a grievance or grievances related to events that occurred while he was housed in the SMU, and claims related to the conditions of his confinement while in the SMU. The vehicle by which federal constitutional claims against state officials may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A. ADA, RLUIPA, and Fifth Amendment Claims

While Haynes references the ADA, RLUIPA, and the Fifth Amendment in his Complaint, he does not to allege facts showing any claims under these provisions. Therefore, I will dismiss these claims without prejudice because they are conclusory. Iqbal, 556 U.S. at 678.

### B. Claims Against Nurse Shelly

Although Nurse Shelly is named as a Defendant, there are no allegation in the Complaint describing any conduct by her. Accordingly, Haynes has not stated a plausible claim against her. See Rode, 845 F.2d at 1207. Because I cannot say at this time that Haynes can never assert plausible claims against Nurse Shelly, he will be permitted to amend his Complaint to add factual allegations against Nurse Shelly, if he can do so.

### C. Claims Involving Grievances

Haynes alleges that he filed grievances, several of which are attached to his Complaint. (Compl. at 12-14.) He further alleges that he did not receive responses to those grievances. (Id. at 5.) To the extent Haynes seeks to pursue a constitutional claim based on a failure to process his grievances, these claims fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam). Accordingly, the facts alleged by Haynes about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice because any attempt to amend this claim would be futile. See also Woods v. First Corr. Med. Inc., 446 F. App'x 400, 403 (3d Cir. 2011) (per curiam) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim … based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances.").

### D. Claims Based on Loss of Personal Property

A possible reading of Haynes's Complaint is that Haynes intends to bring a claim under the Fourteenth Amendment against Defendant Leach for confiscating Haynes's possessions sometime after December 9, 2020. (Complaint at 12, 15.) This could be a claim for depriving Haynes of his property without procedural due process.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006). The level of process required varies by the situation. Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 238 (3d Cir. 2013).

Haynes's Complaint does not identify what procedure was used to confiscate his possessions, what procedures were available to him to reclaim his possessions, or what more was required for Defendant Leach to comply with the Constitution. Haynes's possible procedural due process claim is therefore insufficiently pled and will be dismissed with leave to replead.

While unclear, Haynes may also be claiming that his "papers" and "effects" were seized in violation of the Fourth Amendment. (Complaint at 14.) However, the basis for such a claim is not set out in the Complaint, and I will therefore not consider it.

### E. Claims Related to Placement in SMU

Haynes alleges that he was placed in the Special Management Unit (SMU) in late April 2020 following his refusal to take a Covid-19 test. (Complaint at 13.) I understand Haynes to be

7

alleging a procedural Due Process claim based on his placement in the SMU and the alleged failure to release him to the general prison population.[2]

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" Kanu v. Lindsey, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting Rapier v. Harris, 172 F.3d 999, 1003-06 (7th Cir. 1999)). However, restrictions on pre-trial detainees may violate the Due Process Clause when "(1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" Steele v. Cicchi, 855 F.3d 494, 504 (3d Cir. 2017) (quoting Stevenson v. Carroll, 495 F.3d 62, 70 (3d Cir. 2007)) (alterations in original). In particular, "disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in" Wolff v. McDonnell, 418 U.S. 539 (1974). Kanu, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." Id. (citing Wolff, 418 U.S. at 563-66); see also Stevenson, 495 F.3d at 70.

Haynes alleges that he was placed in the SMU by Defendant Moore when Haynes refused to take a Covid-19 test at the direction of another correctional officer. It is unclear from these allegations what procedures were available to Haynes to challenge his placement in the SMU or

---

[2] While some pages of Haynes's Complaint reference his religious rights, it is unclear if Haynes is asserting that his objection to taking a Covid-19 test was religiously based and that confining him to the SMU therefore violated his rights under the First Amendment or RLUIPA. Because I am granting leave to amend, Haynes will have an opportunity to make these allegations if that is the claim he intended to bring.

8

why those procedures were inadequate. Haynes's claim based on his initial placement in the SMU is too undeveloped for me to determine that Haynes has plausibly alleged a right to relief, and I will accordingly dismiss it. I will permit Haynes to amend this claim.

Haynes also asserts that due to "incompetence and negligence" he remained in the SMU for nearly two years as of the filing of his Complaint. A § 1983 claim may not be predicated on mere negligence. Daniels v. Williams, 474 U.S. 327, 328 (1986). Thus, to the extent Haynes bases his claim on "negligence and incompetence," it is not plausible and will be dismissed.

### F.        Conditions of Confinement Claims

I understand Haynes to raise a conditions of confinement claim based on the lack of a working toilet, lack of water, denial of showers (including after being sprayed with pepper spray), lack of recreational time, and unavailability of a vegan food tray.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). To constitute a Fourteenth Amendment violation, the conditions of confinement must amount to "punishment." Bell v. Wolfish, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." Stevenson, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." Id. (internal quotations and alterations omitted). Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. Bell, 441 U.S. at 542.

Haynes alleges that he was placed in a cell with a toilet that would not flush for five or six days, and that during that time, the toilet filled with feces. Haynes further alleges that he was

9

denied showers and recreational time for a two-week period, including five days in which he was sprayed with mace while naked but not permitted to shower, causing him to feel as if he had been "lit on fire." At this stage of the proceedings, and assuming these allegations to be true, it is plausible that these conditions amounted to unconstitutional "punishment."

However, while I conclude that Haynes has plausibly alleged that he was subject to unconstitutional punishment, I must still dismiss his conditions of confinement claim because Haynes does not allege that the named Defendants were responsible for those conditions. "To impose liability on [an] individual defendant[]" under 42 U.S.C. § 1983, a plaintiff "must show that … [the defendant] individually participated in the alleged constitutional violation or approved of it." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Haynes has not alleged the named Defendants were responsible for preventing him from showering, confining him to a cell without a working toilet, or spraying him with pepper spray. I will therefore dismiss this claim, but will grant Haynes leave to amend it to identify responsible individuals, if he can do so.

### G.  Failure to Protect

Haynes alleges that he was assaulted by staff members and "jumped" in his cell by a "worker" on the instructions of an unnamed correctional officer. I construe these allegations liberally and understand Haynes to be asserting a claim based on a failure-to-protect theory. To make out a failure-to-protect claim against a prison official, a plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. See Farmer v. Brennan, 511 U.S. 825, 834 (1994);

10

Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997); see also Travillion v. Wetzel, 765 F. App'x 785, 790 (3d Cir. 2019) (per curiam). Deliberate indifference in the context of a failure-to-protect claim requires that the defendant prison officials were "actually … aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." Id. (citing Farmer, 511 U.S. at 844). Haynes has not alleged that any named Defendants were aware of any risk of harm to him, or that they ignored a substantial risk of serious harm. As a result, Haynes has not stated a plausible claim based on the Defendants' alleged failure to protect him. This claim will be dismissed, but Haynes will be granted leave to amend to identify responsible individuals, if he can do so.

### H.    Excessive Force Claims

Haynes alleges that he was sprayed with pepper spray or mace by an unnamed unit supervisor then sprayed with mace again later by another unidentified individual. He alleges that he was not decontaminated or permitted to shower for several days following this incident. (Complaint at 15.) He further alleges that he "felt like [he] was lit on fire." (Id.) Haynes claims that this conduct constituted excessive force and cruel and unusual punishment. (Id.)

To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the

11

severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" Jacobs v. Cumberland County, 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Courts should analyze "these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have substantial discretion to devise reasonable solutions to the problems they face.'" Id. at 195 (quoting Kingsley, 576 U.S. at 397, 399)

While Haynes has alleged the level of force used, I am unable to discern from Haynes's Complaint what the correctional officers were responding to when they applied that force. With this information missing, the Complaint fails to raise an inference that the force used was excessive under the circumstances. In addition, Haynes does not allege that any of the named Defendants were responsible for the use of force. I will therefore dismiss these claims without prejudice and allow Haynes to replead.

**I.     Claims Based on Retaliation**

Construing the Complaint liberally, Haynes may be alleging that the conditions of confinement he experienced were the result of retaliatory conduct for his filing of grievances. In order to state a First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). A prisoner's filing of a grievance is constitutionally protected conduct. Robinson v. Taylor, 204 F. App'x 155, 157 (3d Cir. 2006).

Haynes alleges that after he filed a grievance, he was kept in the SMU and harassed and assaulted by staff, who are also alleged to have kept Haynes's vegan food from him and taken his personal property. (Complaint at 12.) These allegations raise a plausible inference that someone retaliated against Haynes. But Haynes does not identify who engaged in the described conduct, and has not tied any of the named Defendants to the complained of conduct. As a result, Haynes has not stated a plausible retaliation claim against any of the named Defendants. However, because I cannot state with certainty that Haynes can never state a plausible claim, he will be permitted to amend this claim, and to identify an appropriate defendant if he can do so.

### J. Deliberate Indifference to Serious Medical Needs

Haynes alleges that he injured his pinky and his right knee and that he was denied care for these injuries. (Complaint at 5.) To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[3] See Farmer, 511 U.S. at 835. A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "A medical need is serious[] … if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the

---

[3] As it appears that Haynes was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. See Hubbard, 399 F.3d at 166. However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. See Parkell v. Morgan, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam).

13

prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "[i]f a prisoner is under the care of medical experts …, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Id. at 236.

Haynes's allegations regarding denial of medical care are too undeveloped to state a claim. Haynes does not describe any request for care, to whom it was made, or the circumstances surrounding the alleged denial. Moreover, he fails to allege that any of the named Defendants played any role in denying him medical care. Because "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable, Rode, 845 F.2d at 1207, and Haynes fails to allege that the named Defendants had any personal involvement in refusing, delaying, or denying him medical care, his claim based on deliberate indifference to a serious medical need is not plausible as pled. Because I cannot state that Haynes will be unable to state a plausible claim, he will be permitted to amend this claim, and to add an appropriate defendant if he can identify one.

### K. State Law Claims

Haynes's state-law claims do not fall within this Court's original jurisdiction. Midland Exp. v. Elkem Holding, 947 F. Supp. 163, 168 (E.D. Pa. 1996). "The district courts may decline to

exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction…." 28 U.S.C. § 1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary," and "should be based on considerations of judicial economy, convenience and fairness to the litigants." Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (quotation mark omitted).

I have dismissed Haynes's federal claims, but I have given Haynes leave to replead them. Accordingly, I will determine whether to exercise jurisdiction over Haynes's state-law claims for assault, battery, and intentional infliction of emotional distress after it is determined whether Haynes's repleaded federal claims will be allowed to go forward.

## IV. **CONCLUSION**

For the foregoing reasons, I will grant Haynes's request for leave to proceed in forma pauperis. I will dismiss with prejudice Haynes's claim based on failure to respond to his grievances. I will dismiss without prejudice Haynes's due process claims based on confiscation of his personal property and placement in the SMU, and his claims based on his conditions of confinement, retaliation, failure to protect, excessive force, deliberate indifference, and for violations of federal statutes. Haynes will be granted leave to amend the claims that are dismissed without prejudice. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

In amending his complaint, Haynes should be mindful that the Court is unfamiliar with the facts of Haynes's case, the individuals involved, and the George Hill Correctional Facility. For example, Haynes's current Complaint contains numerous references to rooms, floors, units, and employees in the Facility that are not explained. In accordance with Rule 8(a)'s directive that a complaint "show[] that the pleader is entitled to relief," Haynes's amended complaint must contain sufficient detail to enable me to understand the basis for Haynes's claims.

An appropriate order follows.